IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM PAIGE CHAPMAN,

          Petitioner,                  No. CIV S-03-1015 FCD DAD P

    vs.

TOM CAREY, Warden,

          Respondent.            <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 1998 judgment of conviction entered against him in Sacramento County Superior Court on charges of forgery and receiving stolen property.  He seeks relief on the grounds that: (1) the evidence was insufficient to support his convictions; (2) his trial and appellate counsel rendered ineffective assistance; (3) the prosecutor committed misconduct; and (4) the cumulative effect of errors at trial violated his right to due process.  Petitioner also requests an evidentiary hearing on his claims.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief and his request for an evidentiary hearing be denied.

/////

1

PROCEDURAL AND FACTUAL BACKGROUND[1]

2

According to the prosecution's case-in-chief, the victim, Raymond
Leonard Scruggs, placed several sealed envelopes in his mailbox to
be collected with outgoing mail.  One envelope included a check
for $452 made payable to State Farm Insurance Company.

3

4

A few hours later, defendant appeared at Schools Federal Credit
Union and attempted to cash the State Farm check, which had been
altered to make it payable to himself in the amount of $252.  The
teller who assisted defendant noticed that the check appeared to
have been "washed," and called her supervisor to review the
transaction.  Defendant was asked to wait in the lobby while the
matter was discussed.

5

6

7

8

The supervisor agreed that the check had been altered, and called
both Scruggs and 911.  Scruggs confirmed he had written the
check, but neither to the payee nor in the amount reflected when
the check was presented.  He said he had put it in his mailbox a
few hours earlier that day.  He denied knowing a person named
"William Chapman."

9

10

11

12

The police arrested defendant at the credit union, where he was still
waiting for the check to be cashed.

13

14

Defendant testified he had received the check as payment for his
work collecting cans and other salvage material.  He said it
amounted to payment for about two weeks worth of work.  He told
his landlady that he was going to cash his paycheck the day he
received it, went to the credit union to do so, and was waiting for
the teller's questions to be resolved when he was arrested.  He
claimed to have believed the check was good.  He admitted he did
not know Scruggs, the account holder.

15

16

17

18

Defendant was charged by amended information with one count of
uttering a forged check (Pen. Code, § 470, subd. (a)),[2] and one
count of receiving stolen property (§ 496, subd. (a)).  The
information also alleged defendant had suffered three prior serious
felony convictions (§ 1192.7, subd. (c)) which also qualified as
strikes under the three strikes law (§§ 667, subds. (b) - (I),
1170.12), and that he had served five prior prison terms within the
meaning of section 667.5, subdivision (b).

19

20

21

22

At the close of the prosecution's evidence during the jury trial,
defendant moved to dismiss pursuant to section 1118.1, based on

23

24

[1]  The following summary is drawn from the April 11, 2001 opinion by the California
Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 2-4, filed on
August 13, 2003, as exhibit D to respondent's Answer.

25

26

[2]  All further undesignated statutory references are to the Penal Code.

lack of evidence that defendant intended to defraud or to violate the law. The court denied the motion, and defendant proceeded with his defense. The People and defendant stipulated to the truth of defendant's alleged prior convictions.

The jury returned verdicts of guilty as charged on both the current offenses and the prior convictions. The court denied defendant's motion to strike a strike pursuant to <u>People v. Superior Court (Romero)</u>, (1996) 13 Cal.4th 497.)

Defendant was sentenced to an aggregate term of 30 years to life in prison pursuant to the Three Strikes law. The court also ordered defendant to pay restitution fines of $10,000, pursuant to section 1202.2 and $10,000 pursuant to section 1202.45, and stayed the latter pending defendant's successful completion of parole.

Defendant objected to the restitution fines, stating that he had no ability to pay. However, the court ruled that defendant could pay with the money he would make in prison.

Petitioner filed a timely appeal of his judgment of conviction in the California Court of Appeals for the Third Appellate District. (Answer, Ex. A.) Therein, he claimed that the evidence was insufficient to support his convictions, the prosecutor committed misconduct during closing argument, and the trial court erred in imposing a restitution fine in the amount of $10,000. (<u>Id.</u>) The appellate court reversed the sentencing court's order imposing restitution, remanded for reconsideration of the proper amount of restitution, and otherwise affirmed the judgment of conviction. (Answer, Ex. D.) Petitioner subsequently filed a petition for review in the California Supreme Court, which was summarily denied by order dated July 23, 2001. (Answer, Ex. E.)

On March 25, 2002, petitioner filed a petition for writ of habeas corpus in the California Superior Court. (Answer, Ex. F.) Therein, he claimed that his sentence constituted cruel and unusual punishment, his trial and appellate counsel rendered ineffective assistance, and the cumulative effect of errors at his trial violated his rights to due process and equal protection. (<u>Id.</u>) That petition was denied in a reasoned decision dated April 12, 2002. (Answer, Ex. G.)

On June 20, 2002, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal. (Answer, Ex. H.) Therein, he claimed that his sentence constituted

1  cruel and unusual punishment, his trial and appellate counsel rendered ineffective assistance, the

2  cumulative effect of errors at his trial violated his rights to due process and equal protection, and

3  the Superior Court's decision rejecting his petition for a writ of habeas corpus was "clearly

4  erroneous and contrary to law." (Id.)  Petitioner also requested an evidentiary hearing on his

5  claims. (Id.)  That petition was summarily denied by order dated June 27, 2002.  (Answer, Ex. I.)

6          On August 20, 2002, petitioner filed a petition for writ of habeas corpus in the

7  California Supreme Court.  (Answer, Ex. J.)  Therein, he claimed that his sentence constituted

8  cruel and unusual punishment, his trial and appellate counsel rendered ineffective assistance,

9  insufficient evidence supported his convictions, and the cumulative effect of errors at his trial

10  violated his rights to due process and equal protection.  (Id.)  Petitioner also requested an

11  evidentiary hearing on his claims.  (Id.)  That petition was summarily denied by order dated April

12  9, 2003.  (Answer, Ex. K.)

13          Petitioner filed the instant petition for writ of habeas corpus on May 13, 2003.

14                              ANALYSIS

15  I.  Standards of Review Applicable to Habeas Corpus Claims

16          A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

17  some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

18  861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

19  Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

20  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

21  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

22  corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

23  (1972).

24          This action is governed by the Antiterrorism and Effective Death Penalty Act of

25  1996 ("AEDPA").  See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

26  /////

1 | 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

2 | habeas corpus relief:

3 |            An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a State court shall
4 |   not be granted with respect to any claim that was adjudicated on
the merits in State court proceedings unless the adjudication of the
5 |   claim -

6 |            (1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law, as
7 |   determined by the Supreme Court of the United States; or

8 |            (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
9 |   State court proceeding.

10 | 28 U.S.C. § 2254(d).  <u>See also</u> <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001); <u>Williams v.</u>

11 | <u>Taylor</u>, 529 U.S. 362 (2000); <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1229 (9th Cir. 2001).

12 |            The court looks to the last reasoned state court decision as the basis for the state

13 | court judgment.  <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir.2004).  Where the state court

14 | reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

15 | habeas court independently reviews the record to determine whether habeas corpus relief is

16 | available under section 2254(d).  <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003);

17 | <u>Delgado v. Lewis</u>, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

18 | reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

19 | AEDPA's deferential standard does not apply and a federal habeas court must review the claim

20 | de novo.  <u>Nulph v. Cook</u>, 333 F.3d 1052, 1056 (9th Cir. 2003); <u>Pirtle v. Morgan</u>, 313 F.3d 1160,

21 | 1167 (9th Cir. 2002).

22 | II.  <u>Petitioner's Claims</u>

23 |       A.  <u>Sufficiency of the Evidence</u>

24 |            Petitioner's first claim is that the evidence introduced at his trial was insufficient

25 | to support his convictions for forgery and receiving stolen property.  (Pet. at 5.)  Specifically, he

26 | claims that the evidence was insufficient to demonstrate he "'knew' the check was stolen and/or

forged, and intended to defraud another." (Id.)  Petitioner argues that instead of focusing on the available evidence, the prosecutor improperly stressed petitioner's prior history, his poverty, and his recent release from custody in order to justify petitioner's conviction.  (Id.)

Petitioner points out that his landlady testified she knew petitioner was waiting to receive a paycheck and that shortly after petitioner's employer came to the residence, presumably to give petitioner his check, petitioner told her that "he had got his paycheck, and he was going to cash it." (Reporter's Transcript on Appeal (RT) at 198.)  Petitioner testified that he believed the check he received from his employer was genuine.  (Id. at 184.)  Petitioner also notes that the evidence reflects he waited at the credit union for the signature on the check to be verified.  He argues, "it is unreasonable to believe that petitioner, who had only been out of prison 40 days and who had prior strikes, would wait around in the lobby of the Credit Union for over 20 minutes while the signature on the check was being verified if indeed he knew that the check was altered." (Memorandum of Points and Authorities in Support of Petition (P&A) at 7.)  Petitioner also argues that while the jury could reasonably discredit his testimony because of his prior felony convictions, there was no reason to reject the testimony of his landlady.  He contends that the jury and the state appellate court "unreasonably rejected his explanation of what took place and adopted the prosecution's explanation solely because of petitioner's past felony convictions." (Id.)  Petitioner argues that the mere fact he had possession of the forged check is insufficient to establish that he knew the check was forged, especially in light of the other evidence at trial indicating that he believed the check to be genuine.  (Id. at 8.)  Petitioner contends that the prosecutor "failed to meet its burden of proof by substantial evidence and not mere speculation as to the elements of knowledge that the check was altered or forged and intent to defraud." (Id.)

### 1. Applicable Law

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  There

1   is sufficient evidence to support a conviction if, "after viewing the evidence in the light most

2   favorable to the prosecution, any rational trier of fact could have found the essential elements of

3   the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also

4   Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).  "[T]he dispositive question

5   under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond

6   a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson,

7   443 U.S. at 318).  A petitioner in a federal habeas corpus proceeding "faces a heavy burden when

8   challenging the sufficiency of the evidence used to obtain a state conviction on federal due

9   process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir. 2005).  In order

10  to grant the writ, the habeas court must find that the decision of the state court reflected an

11  objectively unreasonable application of Jackson and Winship to the facts of the case.  Allen, 408

12  F.3d at 1275.

13          The court must review the entire record when the sufficiency of the evidence is

14  challenged in habeas proceedings.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985),

15  vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is

16  the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

17  reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.  If the trier of

18  fact could draw conflicting inferences from the evidence, the court in its review will assign the

19  inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).  The

20  relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether

21  the jury could reasonably arrive at its verdict.  United States v. Mares, 940 F.2d 455, 458 (9th

22  Cir. 1991).  "The question is not whether we are personally convinced beyond a reasonable

23  doubt.  It is whether rational jurors could reach the conclusion that these jurors reached."

24  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court determines the

25  sufficiency of the evidence in reference to the substantive elements of the criminal offense as

26  defined by state law.  Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

2. Forgery

Petitioner claims that the evidence was insufficient to support his conviction on the charge of forgery. This argument was rejected on the merits by the California Court of Appeal. The appellate court explained its reasoning as follows:

> The elements of the offense of forgery by uttering an altered check are: (1) the defendant attempted to pass the check; (2) the check was altered or otherwise forged; (3) the defendant knew the check was altered or forged; and (4) that defendant attempted to pass the check with the specific intent to defraud and with the specific intent for the check to be taken as genuine. (See CALJIC No. 15.01.)
>
> The issue on appeal concerns the third and fourth elements. Defendant concedes that he intended the check to be taken as genuine, since his defense at trial was that he thought so himself. He also does not dispute the fact that he was in possession of the check or challenge the proof that it was altered.
>
> The inference to be drawn from defendant's possession of the check is that he had knowledge the check was not genuine. (People v. Reisdorff (1971) 17 Cal.App.3d 675, 679; citing People v. Rosborough (2960) 178 Cal.App.2d 156, 163-165, and People v. Pounds (1959) 168 Cal.App.2d 756, 759.) The fact of defendant's possession of the altered check is powerful evidence of this knowledge, needing only slight corroboration to be sufficient for a conviction. (Rosborough at p. 163, citing People v. Russo (1959) 168 Cal.App.2d 747, 749.)
>
> Defendant asserts that since the record lacks any evidence to corroborate he had knowledge the check was altered, and because the surrounding circumstances do not tend to show that he knew so, the mere fact of possession is not enough to establish the mental state requisite to a conviction of this offense. Therefore, he argues the evidence is insufficient to support the verdict.
>
> We disagree. The record contains substantial evidence of motive which corroborates the inference of knowledge to be drawn from fact of possession. Defendant had been released from prison little more than a month before the incident, and was in need of money. He had no other income. He admitted at trial that he needed the money from the check in order to survive. Viewed in the light most favorable to the judgment (People v. Bloyd, supra, 43 Cal.3d at pp. 346-347), we find this evidence of motive corroborates the inference of knowledge to be drawn from the fact of possession, and thereby establishes the element of defendant's knowledge that the check was altered. (People v. Rosborough, supra, 178 Cal.App.2d at pp. 163.)

8

> Since it can be inferred he knew the check had been altered and defendant admits he intended the check to be taken as genuine, the jury could reasonably have deduced that he had the intent to defraud by passing the forged check as well. (Peopld v. Bloyd, supra, 43 Cal.3d at pp. 346-347.) Accordingly, the element of intent to defraud was also established by the evidence. "We must . . . presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence." (Ibid.)

(Opinion at 6-7.)

Viewing the evidence in the light most favorable to the verdict, the undersigned also concludes that there was sufficient evidence from which a reasonable trier of fact could have found beyond a reasonable doubt that petitioner was guilty of forgery. As the California Court of Appeal explained, evidence introduced at petitioner's trial demonstrated that petitioner was in possession of an altered check. Several persons, including the teller and the responding police officer, testified that it was obvious the check had been altered. (RT at 54, 55, 61, 76, 80-81 & 91.) Although petitioner claims he received the check from his employer and that he believed it was genuine, the court notes that the check was drawn on the account of a person other than petitioner's employer. The teller to whom petitioner spoke at the credit union testified that petitioner appeared to be "very nervous," "fidgety" and "shifty." (Id. at 56.) The teller also testified that while petitioner was waiting for the check to be approved, he walked up and down the lobby and approached her several times to ask "what was taking so long." (Id. at 57, 63.) A rational finder of fact could interpret all of this testimony as evidence that petitioner knew the check he attempted to cash was forged. In addition, as noted by the state appellate court, petitioner's financial circumstances provided a possible motive for the crime. (See id. at 186.)

Petitioner argues that rational jurors could not find him guilty of forgery in light of the evidence at trial that he was expecting a paycheck and that he waited at the bank for twenty minutes while the check was being verified instead of fleeing the scene. (Traverse at 5-6.) It is true that petitioner has articulated, here and at trial, a rational view of the evidence as reflecting that he was unaware of a forgery that was actually committed by his employer. However, the fact

1   that there was evidence introduced at petitioner's trial supporting his version of the events is not

2   the appropriate test.  The test is whether sufficient evidence supports the verdict rendered by the

3   jury.  The record before this court, as described above, contains sufficient evidence to support the

4   jury's finding that petitioner knew the check had been forged and was therefore guilty of the

5   crime of uttering a forged check when he presented it to the credit union for payment.

6           Petitioner argues that he was convicted based largely on his prior record and the

7   fact that he had just been released from prison.  (Id. at 9.)  He contends that these factors

8   improperly influenced the jury to disbelieve his testimony.  (Id.)  However, as the jury at his trial

9   was instructed, the fact that petitioner had suffered a prior felony conviction was one factor that

10  the jurors were entitled to take into account in assessing his credibility.  (Clerk's Transcript on

11  Appeal (CT) at 86.)  The jury apparently disbelieved petitioner when he testified that he did not

12  know the check had been altered.  "A jury's credibility determinations are therefore entitled to

13  near-total deference under Jackson."  Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004).  See

14  also Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the

15  credibility of witnesses is generally beyond the scope of review.")

16          For the reasons described above, the state court's conclusion that sufficient

17  evidence presented at petitioner's trial supported the jury's finding with respect to the element of

18  petitioner's knowledge is not "objectively unreasonable."  See Woodford v. Visciotti, 537 U.S.

19  19, 25 (2002).  See also 28 U.S.C. § 2254(d)(1).  Accordingly, petitioner is not entitled to habeas

20  relief on his claim that the evidence was insufficient to support his conviction on the forgery

21  charge.

22          3.  Receiving Stolen Property

23          Petitioner's next claim is that the evidence was also insufficient to support his

24  conviction on the charge of receiving stolen property.  Specifically, he again contends that there

25  was no evidence presented to the jury establishing that he knew the check was stolen.  He argues,

26  /////

1   "substantial evidence does not support a finding that the more reasonable interpretation of the

2   circumstantial evidence surrounding his knowledge is one of guilt."  (P&A at 9.)

3           Petitioner's argument in this regard was rejected by the California Court of

4   Appeal in a written decision affirming petitioner's judgment of conviction on direct appeal.

5   (Answer, Ex. D.)  The state appellate court explained its reasoning as follows:

6           The offense of receiving stolen property is based on three
            elements: (1) certain property was stolen; (2) defendant received,
7           concealed or withheld the property; and (3) defendant knew it was
            stolen at the time he received it.  (People v. Reyes (1997) 52
8           Cal.App.4th 975, 984; People v. Martin (1973) 9 Cal.3d 687, 695;
            see also CALJIC No. 14.65.)
9
            Just as in the crime of uttering a forged check, possession of stolen
10          property is evidence permitting "'strong inference of the . . .
            element . . . [of] the defendant's knowledge of the tainted nature of
11          the property.  This inference is so substantial that only "slight"
            additional corroborating evidence need be adduced in order to
12          permit a finding of guilty.  [Citation.]'"  (People v. Reyes, supra,
            52 Cal.App.4th at p. 985, quoting People v. Anderson (1989) 210
13          Cal.App.3d 414, 421.)

14          Evidence that corroborates the inference that defendant knew the
            check was stolen can be found in the fact that it was drawn on the
15          account of Scruggs, who defendant had never met, and not on the
            account of his employer, a person named Jerry Eickholt [sic].
16          Viewing the record in the light most favorable to the verdict
            (People v. Boyd, supra, 43 Cal.3d at pp. 346-347), the evidence
17          consisting of this corroborated inference was sufficient to establish
            the element of knowledge requisite to a conviction of receiving
18          stolen property.  (People v. Reyes, supra, 52 Cal.App.4th at pp.
            985-986.)
19

20  (Opinion at 7-8.)

21          The decision of the California Court of Appeal that sufficient evidence supported

22  the element of knowledge necessary for conviction is not an unreasonable application of Jackson.

23  Evidence that the check was drawn on the account of someone other than petitioner's employer,

24  along with evidence that the check was obviously altered, provided sufficient evidence from

25  which the jury could reasonably conclude that petitioner knew the check had been stolen.

26  Notwithstanding petitioner's trial testimony, the jury was entitled to disbelieve his version of the

1  events and interpret the trial evidence as establishing petitioner's guilt beyond a reasonable

2  doubt.  Accordingly, petitioner is not entitled to habeas relief on this claim.

3          B.  Ineffective Assistance of Counsel

4          Petitioner next claims that his trial counsel rendered ineffective assistance because

5  of numerous errors in trial preparation and in conducting the trial.  After setting forth the relevant

6  legal standards, the court will analyze these claims in turn below.

7          1.  Legal Standards

8          The Sixth Amendment guarantees the effective assistance of counsel.  The United

9  States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

10 Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

11 counsel, a petitioner must first show that, considering all the circumstances, counsel's

12 performance fell below an objective standard of reasonableness.  See Strickland, 466 U.S. at

13 687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the

14 result of reasonable professional judgment, the court must determine whether, in light of all the

15 circumstances, the identified acts or omissions were outside the wide range of professionally

16 competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a

17 petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland,

18 466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

19 counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at

20 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

21 outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981

22 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was

23 deficient before examining the prejudice suffered by the defendant as a result of the alleged

24 deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

25 sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955

26 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

1     In assessing an ineffective assistance of counsel claim "[t]here is a strong

2  presumption that counsel's performance falls within the 'wide range of professional assistance.'"

3  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There

4  is in addition a strong presumption that counsel "exercised acceptable professional judgment in

5  all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

6  Strickland, 466 U.S. at 689).  However, that deference "is predicated on counsel's performance

7  of sufficient investigation and preparation to make reasonably informed, reasonably sound

8  judgments."  Mayfield v. Woodford, 270 F.3d 915, 927 (9th Cir. 2001) (en banc).

9           2.  Failure to Conduct Adequate Investigation of Petitioner's Employer

10    Petitioner claims that his trial counsel rendered ineffective assistance when he

11  failed to conduct sufficient investigation with respect to Jerry Eicholt, petitioner's employer, and

12  failed to inform the jury of Eicholt's prior record, which included convictions for forgery,

13  receiving stolen property, and "insufficient funds in a checking account."  (P&A at 10 & Ex. C;

14  Traverse at 11.)  In this regard, petitioner argues as follows:

15           Petitioner's recent release from prison could just as reasonably be
         construed as confirming petitioner's theory on defense – that he
16           was given the check by Jerry Eicholt, and that petitioner reasonably
         believed the check to be valid and legal, i.e., that petitioner was
17           willing to work hard to remain out of prison, but was paid by a
         check he believed in good faith was valid, only to discover
18           afterwards the check had been stolen and altered by Mr. Eicholt.  It
         must also be remembered that petitioner had spent the better part of
19           the previous two decades in prison, and had not personally seen a
         pay check or any check in all that time.  His behavior at the bank –
20           patiently waiting for the teller to confirm the check (while the teller
         was actually telephoning the police) – was consistent with
21           innocence and inconsistent with a guilty knowledge and "intent" to
         commit a criminal offense.

22

23  (P&A at 12.)  Petitioner argues that, in light of these circumstances, his trial counsel should have

24  called Mr. Eicholt as a witness at his trial.  He explains:

25  /////

26  /////

1  "The jury was not informed" that Eicholt was interviewed at Duell
   Vocational Institute, that he disavowed knowledge of giving a
2  check to petitioner, and that it should be readily apparent that if
   Jerry was facing his own criminal disposition, he would not want
3  to bring additional charges upon himself by making an admission
   against his own penal interests. . . .  However, petitioner had the
4  right to present to the trial jury with the actual person of Eicholt,
   and counsel should have made every effort to demonstrate that
5  Eicholt had the same motive and opportunity to commit the crimes
   that the State alleged against petitioner – and an effective defense
6  attorney would have made sure that the jury would know of
   Eicholt's prior convictions of forgery and receiving stolen
7  property.

8  (Traverse at 13-14.)

9       In support of this ineffective assistance of counsel claim, petitioner has filed the

10  declaration of Jackie Marie Gray, who declares that she investigated Mr. Eicholt's background

11  and discovered that he had a lengthy criminal history, which included convictions for forgery,

12  burglary, and receiving stolen property.  (Pet., Ex. C.)  Petitioner argues that this information

13  alone would have "been beneficial to [his] defense" and contends that "because Eicholt's charges

14  are so similar to this instant conviction, counsel should have presented that evidence to the jury."

15  (P&A at 16.)

16       Petitioner acknowledges that the defense investigator interviewed Mr. Eicholt in

17  state prison prior to petitioner's trial at which time Eicholt disavowed giving a check to

18  petitioner.  ((P&A at 10; Traverse at 13.)  Nonetheless, he faults his trial counsel for failing to

19  follow up on that investigation in light of the factors, described above, suggesting the possibility

20  that Eicholt was lying about his involvement in the relevant events.  Petitioner also claims that

21  trial counsel's failure to present Mr. Eicholt as a witness prevented him from offering a defense

22  of third-party culpability and/or actual innocence.  He asks, "A jury would reasonably want to

23  know, where a defendant claims innocence, then who did the crime?  . . . Because the jury had no

24  answer to that question and believed petitioner had no explanation, they convicted."  (Id. at 19.)

25  Petitioner claims, in essence, that had the jurors known about Mr. Eicholt's prior record, and had

26  Eicholt been called as a witness at petitioner's trial, the jury would have concluded that Eicholt

1  stole and altered the check without petitioner's knowledge, or at least would have formed a

2  reasonable doubt as to petitioner's guilt.

3         Petitioner raised this claim for the first time in a petition for writ of habeas corpus

4  filed in the Sacramento Superior Court.  (Answer, Ex. F.)  The Superior Court rejected the claim,

5  reasoning as follows:

6         Petitioner's next claim is that trial counsel was ineffective in
        failing to present a potential witness who would have been
7         favorable to petitioner.  Specifically, petitioner claims that Jerry
        Eicholt did not testify at trial, and the jury therefore was not
8         informed that trial counsel had an investigator interview Eicholt
        before trial, at Dueul Vocational Institute, where Eicholt was being
9         held pending his own criminal disposition, and that Eicholt
        disavowed knowledge of giving a check to petitioner in that
10        interview.

11        Petitioner, however, fails to attach reasonably available
        documentary evidence that would set forth from Eicholt himself
12        the substance of Eicholt's testimony that would have been given
        had he been called to the witness stand.  The claim therefore fails
13        under In re Swain (1949) 34 Cal.2d 300 and In re Harris, supra, 5
        Cal.4th 813, 827 fn. 5.

14

15  (Answer, Ex. G at consecutive p. 3.)

16        Petitioner's claim is not without some degree of superficial appeal.  However, all

17  of petitioner's arguments in support of this claim of ineffective assistance of trial counsel suffer

18  from the same fatal defect: petitioner's trial counsel had a defense investigator interview Jerry

19  Eicholt and evidently decided, after hearing what Eicholt had to say, not to call him as a witness

20  or attempt to produce evidence of his past criminal history.  Accordingly, this is not a case where

21  defense counsel failed to contact a potential witness and therefore could not be presumed to have

22  made an informed decision.  See Reynoso v. Giurbino, 462 F.3d 1099, 1112 (9th Cir. 2006);

23  Riley v. Payne, 352 F.3d 1313, 1324 (9th Cir. 2003).  Rather, this was a tactical decision made

24  by counsel who had conducted proper investigation by having the witness in question

25  /////

26  /////

interviewed.[3]   Petitioner's post-conviction disagreement with trial counsel's tactical decision

cannot form the basis for a claim of ineffective assistance of counsel.  See Strickland, 466 U.S. at

687 (trial counsel's tactical decisions are "virtually unchallengeable");  United States v. Oplinger,

150 F.3d 1061, 1072 (9th Cir. 1998) (due to the contradictory nature of the evidence "[c]ounsel's

decision not to put Oplinger on the stand appears to have been well-advised"); Gerlaugh v.

Stewart, 129 F.3d 1027, 1033 (9th Cir. 1997) (counsel not ineffective in failing to call a witness

where he "knew about the evidence and looked into it, but chose as a tactical matter not to use

it"). Cf. Lord v. Wood, 184 F.3d 1083, 1095 & n.8 (9th Cir. 1999) (tactical decision by three

defense attorneys in a capital case not to put witnesses on the stand was entitled to "less

deference" because they failed to interview the witnesses themselves, relying instead on the

impressions of their investigators).

Even assuming arguendo that petitioner's trial counsel failed to properly

investigate Jerry Eicholt, petitioner has not demonstrated prejudice, or a reasonable probability

that the outcome of his trial would have been different had Eicholt been called to testify in the

defense case.  Although petitioner speculates that Eicholt's testimony would have been helpful to

him, he does not provide any evidence of what Eicholt would have said.  Indeed, it appears clear

from the investigation conducted by petitioner's counsel that Mr. Eicholt would have

contradicted petitioner's version of the events.  Under those circumstances, petitioner cannot

---

[3]   In fact, defense counsel presented to the jury the theory of defense endorsed by petitioner here.  Petitioner testified at trial that he had received the check from Jerry Eicholt, a man he had known for two weeks, as payment for his work collecting cans and other salvage material. (RT at 165-67, 170.)  Petitioner testified that he told his landlady that he was going to cash his paycheck the day he received it, went to the credit union to do so, and was waiting for the teller's questions to be resolved when he was arrested.  (RT at 173-74.)  Petitioner testified that he thought the check was good but conceded that he did not know the account holder.  (RT at  172, 183.)  Defense counsel also called petitioner's landlady, Miss Mack, who corroborated petitioner's testimony that he and Jerry Eicholt left her house that day at the same time and that petitioner stated that he had gotten his paycheck and was going to cash it. (RT at 198-99.)  In his closing argument, defense counsel advanced the same arguments with respect to the evidence presented by petitioner before this court along with discussion of the presumption of evidence and the proof beyond a reasonable doubt standard.  (RT at 240-51.)  The defense case would not likely have been improved by the calling of Eicholt as a witness to contradict petitioner's testimony.

1   demonstrate that his counsel's tactical decision not to call Mr. Eicholt as a witness was

2   detrimental to the defense.  See Jackson v. Calderon, 211 F.3d 1148, 1159-60 (9th Cir. 2000);

3   Villafuerte v. Stewart, 111 F.3d 616, 632 (9th Cir. 1997) (petitioner's ineffective assistance claim

4   denied where he presented no evidence concerning what counsel would have found had he

5   investigated further, or what lengthier preparation would have accomplished); United States v.

6   Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (no ineffective assistance because of counsel's

7   failure to call a witness where, among other things, there was no evidence in the record that the

8   witness would testify); United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant

9   failed to meet prejudice prong of ineffectiveness claim because he offered no indication of what

10  potential witnesses would have testified to or how their testimony might have changed the

11  outcome of the hearing).  Cf. Lord, 184 F.3d at 1085 (petitioner's ineffective assistance claim

12  granted where counsel failed to personally interview witnesses whose testimony, if believed,

13  would have cleared petitioner of murder).

14          Finally, petitioner's argument that the verdict would have been different if the

15  jurors had been apprised of Eicholt's criminal history, even in the absence of his live testimony,

16  is far too speculative to establish prejudice.  In California, "third party culpability evidence is

17  relevant and admissible only if it succeeds in 'linking the third person to the actual perpetration

18  of the crime."  People v. DePriest, 42 Cal. 4th 1, 43 (2007) (quoting People v. Hall, 41 Cal. 3d

19  826, 833 (1986)). See also People of the Territory of Guam v. Ignacio, 10 F.3d 608, 611 (9th Cir.

20  1993) (Evidence of third-party culpability is generally not admissible "if it simply affords a

21  possible ground of suspicion against such person; rather, it must be coupled with substantial

22  evidence tending to directly connect that person with the actual commission of the offense.")

23  Eicholt's criminal record, standing alone, would not have met this standard for admissibility.

24  Therefore, even if defense counsel had attempted to introduce Eicholt's criminal record into

25  evidence, it is unlikely that it would have been admitted by the trial judge.

26  /////

1    For all of these reasons, petitioner is not entitled to relief on his claim that his trial

2 counsel rendered ineffective assistance by failing to conduct a thorough investigation of Jerry

3 Eicholt and by not calling Eicholt as a defense witness at trial.[4]

4    3. Evidence of Poverty

5    Petitioner claims that his trial counsel also rendered ineffective assistance "for

6 allowing evidence of poverty at trial." (P&A at 14.)  Although petitioner does not cite any

7 portion of the trial court record in support of this claim, an independent review of that record

8 reflects that during his trial testimony petitioner volunteered that he was short of money at the

9 time he attempted to cash the forged check.  The relevant exchange is as follows:

10    Q.  (by petitioner's counsel):  You were stating something about in
     your working relationship with Jerry.  You started to say you
11    weren't in the position, and then you didn't finish the answer.
     What were you talking about when you said you were not in the
12    position to do something?

13    A.  (by petitioner):  I was – I had no money other then I had
     change, a few change, some change, pocket change.  I was in no
14    position to ask – you know, it's hard to explain.  I don't know who
     questions their employer.  You know, I needed the money myself

15

16    ⁴ Although petitioner claims throughout the petition that he did not know the check in
   question had been forged, he does not appear to be raising a free-standing claim of actual
17   innocence.  In any event, such a claim lacks merit.  In Herrera v. Collins, a majority of the
   Supreme Court assumed without deciding that the execution of an innocent person would violate
18   the Constitution.  A different majority of the Supreme Court explicitly so held.  Compare 506
   U.S. at 417 with 506 U.S. at 419 and 430-37.  See also House v. Bell, ___ U.S. ___, 126 S. Ct.
19   2064, 2084 (2006) (declining to resolve whether federal courts may entertain claims of actual
   innocence but concluding that the petitioner's showing of innocence in that case fell short of the
20   threshold suggested by the Court in Herrera); Jackson, 211 F.3d at 1164; Carriger v. Stewart, 132
   F.3d 463, 476 (9th Cir. 1997) (en banc).  Although the Supreme Court did not specify the
21   standard applicable to this type of "innocence" claim, it noted that the threshold would be
   "extraordinarily high" and that the showing would have to be "truly persuasive."  Herrera, 506
22   U.S. at 417.  See also Carriger, 132 F.3d at 476.  The Ninth Circuit has determined that in order
   to be entitled to relief on such a claim a petitioner must affirmatively prove that he is probably
23   innocent.  Jackson, 211 F.3d at 1165; Carriger, 132 F.3d at 476-77.  Even assuming arguendo
   that a freestanding claim of innocence may be maintained in this non-capital case, petitioner has
24   failed to make the required showing.  Petitioner's unsupported allegations suggesting that Mr.
   Eicholt had forged the check and given it to him are insufficient to establish that petitioner did
25   not know the check he attempted to cash had been forged.  Further, the fact that Eicholt had a
   prior history of forgery does not, without more, demonstrate that he forged the check at issue in
26   this case.  Accordingly, habeas relief as to any claim of actual innocence should also be denied.

1       "cause I had no clothes or place to live or food other then what Miss Mack let me have to eat.  And she had her own family to take care of.  And I'm – I was trying to get up on my feet.

2

3       Q.  So what you are saying is that you just weren't in a position to challenge Mr. Eicholt about the pay?

4

5       A.  That's probably the best way to put it.

6  (RT at 187.)

7       It appears from the record that petitioner's counsel pursued this line of

8  questioning in an attempt to explain to the jury why petitioner did not question Mr. Eicholt about

9  the fact that petitioner's paycheck was drawn on the account of someone other than Mr. Eicholt.

10  Defense counsel's decision to elicit this testimony was reasonable because it enabled the defense

11  to counter the inference that petitioner's failure to question the unusual nature of the check

12  indicated he knew the check had been altered.  Evidence of petitioner's poverty was introduced

13  by the defense and not for the purpose of demonstrating that petitioner had a motive to commit

14  forgery.  Nor was it used for the latter purpose by either party at trial.

15       Petitioner also argues that it was improper for the California Court of Appeals to

16  rely upon evidence of petitioner's poverty to establish a motive to commit forgery.  (P&A at 12.)

17  As discussed above, the Court of Appeals concluded that petitioner's poverty provided a motive

18  to obtain money which, when considered along with evidence that petitioner possessed and

19  attempted to cash an obviously altered check, constituted sufficient evidence to support his

20  conviction on the forgery charge. (Opinion at 6-7.)  The appellate court's reliance on this

21  evidence for that limited purpose was appropriate under state law.  See People v. Rosborough,

22  178 Cal. App.2d 156, 163 (1960) (appellate court used defendant's poverty, along with his

23  possession of a forged document, as evidence of motive to commit forgery); People v. Hawkins,

24  196 Cal. App. 2d 832, 836 (1961).  In addition, as explained above, there was sufficient evidence

25  to support petitioner's convictions apart from any evidence of his lack of money.  This court

26  /////

1  finds no due process violation resulting from the appellate court's reference to evidence of

2  petitioner's financial situation in reviewing the jury verdict on the forgery charge.[5]

3          For all of these reasons, petitioner is not entitled to relief on his claim that his trial

4  counsel rendered ineffective assistance by introducing evidence of petitioner's poverty at trial.

5          4.  Failure to Call a Handwriting Expert

6          Petitioner next claims that his trial counsel rendered ineffective assistance by

7  failing to obtain a handwriting expert as a trial witness.  (Pet. at 6; P&A at 21.)  Petitioner states

8  that he did not "write or alter the check in question" and that a handwriting expert would have

9  verified this fact.  (P&A at 23.)  Petitioner informs the court that his counsel at the preliminary

10  hearing obtained the services of a handwriting expert, but that his trial counsel declined to use

11  any evidence reflected in the expert's report.  (Id.)  Petitioner does not explain or provide any

12  evidence of what the defense handwriting expert found, although he states in conclusory fashion

13  that it "would have presented solid and near irrefutable evidence that this petitioner was **not** the

14  person who altered the check."  (Id.)

15          Respondent notes that petitioner's conviction for forgery was based on the theory

16  that petitioner attempted to cash an altered check with knowledge that it was altered, and with the

17  intent to defraud the credit union and Mr. Scruggs.  (Answer at 19.)  The prosecution theory of

18  the case did not depend on a finding that petitioner actually altered the check himself.  (Id; see

19  also Ex. M.)

20  /////

21  /////

22

23          [5]  The Ninth Circuit has concluded that under federal law "evidence of poverty is not
admissible to show motive, because it is of slight probative value and would be unfairly
24  prejudicial to poor people charged with crimes."  United States v. Mitchell, 172 F.3d 1104, 1108
(9th Cir. 1999).  In this case, however, evidence of petitioner's circumstances was not admitted at
25  trial to show motive.  Rather, petitioner's own counsel elicited testimony about petitioner's
recent release from prison and lack of money in order to explain why he did not question Mr.
26  Eicholt about the unusual nature of the check.  Testimony regarding petitioner's poverty was only
a minor portion of the evidence at trial, it was not particularly flammable under these
circumstances, and it was introduced by petitioner himself.

1    This claim was raised for the first time in petitioner's application for writ of

2    habeas corpus filed in the California Superior Court.  The Superior Court rejected the claim,

3    reasoning as follows:

4            Petitioner's next claim is that trial counsel was ineffective in
             failing to present evidence from a handwriting expert that
5            petitioner was not the person who had altered the check.

6            Again, however, petitioner fails to attach reasonably available
             documentary evidence that would set forth from the expert witness
7            the substance of the testimony the expert would have given had the
             expert been called to the witness stand.  The claims fails under
8            Swain, supra, and Harris, supra.

9    (Answer, Ex. G at consecutive p. 3.)

10    A review of the state court record reflects that petitioner was originally charged

11    with forging a check and then attempting to pass it as genuine.  (CT at 16.)  Allegations that

12    petitioner forged the check himself were later excised from the information, leaving only the

13    allegation that petitioner attempted to pass an altered check.  (Id. at 51.)  These amendments to

14    the information were discussed in court in the presence of all parties.  (Answer, Ex. O.)

15    Subsequently, the case proceeded to trial on the sole theory that petitioner attempted to cash a

16    check that he knew to be forged.  (See CT at 90-91 (jury instruction); RT at 235 (prosecutor's

17    closing argument).)

18    In light of the prosecution's theory of liability, it was unnecessary for defense

19    counsel to demonstrate the identity of the forger.  Even if evidence demonstrated that Eicholt

20    altered the check, the jury could still have found that petitioner was guilty of the charge against

21    him (uttering a forgery) because he knew the check was altered when he presented it to the credit

22    union for payment.  Under these circumstances, trial counsel's failure to call a handwriting expert

23    was reasonable and did not fall outside the wide range of professional assistance.

24    In addition, the court notes that petitioner only implies, but does not affirmatively

25    state, that a handwriting expert would testify petitioner did not alter the check.  As noted by the

26    California Superior Court, such speculation is insufficient to establish prejudice.  See Wildman

1  v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001) (speculating as to what expert would say is not

2  enough to establish prejudice); Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) (same).

3  For all of these reasons, petitioner is not entitled to relief on this claim.

4                  5.  Failure to Object to the Prosecutor's Argument

5                  Petitioner's next claim is that his trial counsel rendered ineffective assistance

6  when he failed to object to a statement made by the prosecutor during her closing argument

7  which mischaracterized trial testimony.  (Pet. at 6; P&A at 26-29.)  The background to this claim

8  was described by the California Court of Appeal in connection with another argument raised by

9  petitioner on appeal.  The appellate court described the relevant facts as follows:

10                 Defense counsel had argued that it made no sense for defendant to
                   wash the check, lower the amount, and then wait in the bank while
11                 it was being cashed.  Counsel stated:  "Let's look at his conduct.
                   That's circumstantial evidence of what he knew.  Is his conduct at
12                 the bank evidence of his state of mind, yes.  And what is that state
                   of mind?  He just waited around there to get paid.  He didn't have
13                 any fear of anything.  He was just sitting there in plain view of
                   everybody.  He was prepared to show his ID.  Everything about his
14                 conduct at the bank speaks to him being in there for what he
                   thought was a valid purpose. . . . [A]nd . . . the thing that I find the
15                 most curious, . . . Normally when somebody alters a check, I would
                   think they would want to increase the value.  In this particular case,
16                 the value is degraded by almost half."

17                 The challenged argument occurred when the prosecutor offered,
                   during rebuttal, an explanation why the check was forged in an
18                 amount lower than originally written.  She stated:  "Talk about the
                   difference in amounts.  Well, of course, I believe Ms. Carillo [the
19                 teller] testified, they usually write it for less . . . because they don't
                   want to alert the bank."

20
                   In fact, the teller did not testify as the prosecutor indicated.
21                 However, defense counsel made no objection to the prosecutor's
                   argument.
22

23  (Opinion at 8-9.)

24  /////

25  /////

26  /////

22

Petitioner argued on appeal that the prosecutor committed misconduct by virtue of the above-described remarks.[6]   The California Court of Appeal agreed that "the prosecutor's reference to testimony that the teller never gave was misconduct."   (Id. at 10.)  The state appellate court concluded, however, that the issue was waived because petitioner's trial counsel failed to raise a contemporaneous objection to the prosecutor's argument.  (Id.)  The appellate court also found that the prosecutor's remarks were not prejudicial because they concerned merely a minor issue.  The  court explained its reasoning as follows:

> The main thrust of defendant's case was to establish that he had received the check from his employer as a paycheck and that he believed it to be good.  The prosecutor's argument that the teller had presented testimony about why defendant would lower the amount of the check was at most marginally relevant to defendant's primary theory that he had no knowledge the check was altered in the first place.  The prosecutor's argument did nothing to defeat defendant's theory of defense.  Instead, it left the jury with a credibility issue to be resolved by comparing the defendant's claims that he believed the check was good and behaved consistent with that belief, on the one hand, with the prosecutor's theory that defendant knew the check had been altered, on the other.

(Id. at 11-12.)

Petitioner also argued on appeal that his trial attorney rendered ineffective assistance because of his failure to object to the prosecutor's closing argument in this regard. The state appellate court rejected this argument as well, ruling as follows:

> In this case, we discern a satisfactory reason why counsel did not object.  The prosecutor's argument raised an issue that was only marginally relevant to the issues before the jury.  As stated ante, the jury was confronted with a credibility contest between the defendant, who testified he thought the check was his paycheck, and the prosecution, whose evidence was directed to showing that defendant knew the check was not genuine because it was so obviously "washed."  The reference to non-existent testimony from the teller did not bear on this central issue, but instead supported an alternate theory that defendant had in fact altered the check.  The jury did not have to find defendant had altered the check himself in order to render a guilty verdict on the charge of uttering a forged

---

[6]  Petitioner does not raise a claim of prosecutorial misconduct on these grounds in the instant petition.  (See P&A at 29.)  Accordingly, this court will not address any such claim.

1   check; hence, the nonexistent testimony about why a person would
    forge a check for a lower amount was not a key issue.  We
2   conclude defendant counsel may reasonably have decided not to
    object in order to forego drawing the jury's attention to this
3   alternative theory further.  This explanation for counsel's
    performance precludes a finding of ineffective assistance of
4   counsel.

5   (Id. at 12-13.)

6           The state court's conclusion that petitioner's counsel did not render ineffective

7   assistance by failing to object to the prosecutor's remarks is not an unreasonable application of

8   Strickland and should not be set aside.  As explained above, petitioner was prosecuted for forgery

9   under the theory that he tried to cash a check knowing that it had been altered.  The identity of

10  the person who actually altered the check was not particularly relevant under this theory of

11  liability.  It was not incumbent on defense counsel to challenge the prosecutor's statement

12  mischaracterizing the teller's testimony.  On the contrary, as explained by the state appellate

13  court, defense counsel may have wished to simply ignore any passing reference to the possible

14  alternate theory of liability that petitioner may have altered the check.  Counsel's failure to object

15  to the prosecutor's statements was a reasonable tactical decision.  Accordingly, petitioner is not

16  entitled to relief on this claim.

17          6.  Failure to Object to the Giving of CALJIC No. 15.01

18          Petitioner was originally charged in Count I of the information with a violation of

19  California Penal Code § 470(a) in that he forged and attempted to pass a forged check.[7]  As noted

20  above, Count I was later amended to delete the allegation that petitioner forged the check

21  himself, and to allege instead only that petitioner attempted to pass the forged check.  (CT at 51.)

22  However, the amendment of Count I did not delete reference to § 470(a), nor did it add reference

23  /////

24  /////

25  ────────────────────

26      [7]  California Penal Code § 470(a) provides that "[e]very person who, with the intent to
    defraud, knowing that he or she has no authority to do so, signs the name of another person or of
    a fictitious person to any of the items listed in subdivision (d) is guilty of forgery.

1  to any other code section.[8]  After the close of evidence, petitioner's jury was instructed with

2  CALJIC No. 15.01, which provides as follows:

> The defendant is accused in Count One of having violated Section
> 470 of the Penal code.
>
> Every person who, with the specific intent to defraud another,
> utters, publishes, passes, or attempts to pass, as true and genuine,
> any false, altered, forged, or counterfeited instrument, document or
> check, knowing the same to be false, altered, forged, or
> counterfeited, is guilty of the crime of forgery in violation of Penal
> Code Section 470.
>
> The words "utter" and "publish" mean the same thing.  They mean
> to use or attempt to use an instrument, document or writing to
> either (1) assert that the instrument, document or writing is
> genuine, or (2) represent to someone else that it is genuine.  The
> assertion or representation may be direct or indirect, express or
> implied, by words or conduct.
>
> In order to prove this crime, each of the following elements must
> be proved:
>
> One, a person uttered, published, passed, or attempted to pass a
> false, altered, forged, counterfeited check;
>
> Two, that person knew that the instrument or document was false,
> altered, forged or counterfeited;
>
> Three, that person uttered, published, passed, or attempted to pass
> the check with the specific intent to defraud another person or
> persons; and
>
> Four, that person uttered, published, passed, or attempted to pass
> the check with the specific intent that it be accepted as a true and
> genuine check.

20  (RT at 227-28.)

---

22      [8] Petitioner suggests that rather than alleging a violation of § 470(a) the language of
amended Count I appears to fall within the parameters of California Penal Code § 470(d), which
23  provides, in pertinent part, that "every person who, with the intent to defraud, falsely . . . utters,
publishes, passes or attempts or offers to pass, as true and genuine, (any check), knowing the
24  same to be false, altered, forged, or counterfeited, is guilty of forgery."  He also suggests that the
amended Count I should have alleged a violation of California Penal Code § 475(a), which
25  provides that: "[e]very person who possesses or receives, with the intent to pass or facilitate the
passage or utterance of any forged, altered, or counterfeit items, or completed items contained in
26  subdivision (d) of Section 470 with intent to defraud, knowing the same to be forged, altered, or
counterfeit, is guilty of forgery."

1    Petitioner claims that his trial counsel rendered ineffective assistance when he

2    failed to "object or seek to modify" CALJIC 15.01 to remove all reference to "passing or

3    attempting to pass" an altered or forged check.  (P&A at 31.)  Petitioner contends that his

4    counsel's failure to request this modification "allowed the jury to convict petitioner of a crime

5    not charged in the information."  (Pet. at 7; P&A at 30; Traverse at 25.)  Petitioner claims that

6    counsel's failure to seek a modification of CALJIC No. 15.01 to ensure that the instruction given

7    to his jury tracked the language of California Penal Code § 470(a), the crime he was actually

8    charged with committing, resulted in a conviction "based upon charges not brought, and to which

9    no defense had been presented."  (P&A at 31.)  In essence, petitioner is claiming that he should

10   not have been found guilty because his actions, as proven by the evidence at trial, did not satisfy

11   the elements of Penal Code § 470(a).

12   Petitioner presented this claim for the first time in a petition for writ of habeas

13   corpus filed in the California Supreme Court.  (Answer, Ex. J.)  That petition was summarily

14   denied.  (Answer, Ex. K.)  Under these circumstances, this court must independently review the

15   record to determine whether habeas corpus relief is available under section 2254(d).  Himes, 336

16   F.3d at 853.

17   Petitioner is not entitled to relief on this claim because he has failed to

18   demonstrate prejudice.  It is true that, as amended, the allegations set forth in Count I of the

19   charging document do not appear to fall within the parameters of California Penal Code § 470(a).

20   That code section addresses a situation where the defendant actually commits a forgery and not a

21   situation where the defendant only utters a forged instrument.  However, at trial both the

22   prosecution and the defense were well aware that petitioner was being tried for forgery on the

23   theory that he uttered, or attempted to pass, a forged check, and not on the theory that he forged

24   the check himself.  This was made clear when the information was amended with the consent of

25   all parties, when the opening and closing statements to the jury were made, and when the jury

26   was instructed with CALJIC No. 15.01.  The failure to delete reference to Penal Code § 470(a)

1  from the information and to amend it to refer to another code section, even if technically

2  erroneous, is a mere oversight under the circumstances presented here.  See Penal Code § 996

3  (objection waived by failure to move to set aside information).  Petitioner was informed of the

4  exact allegations against which he was expected to mount a defense and petitioner's jury was

5  correctly advised of the prosecutor's theory of liability.  Petitioner has failed to demonstrate that

6  the result of the proceedings would have been different had his trial counsel objected to CALJIC

7  No. 15.01 in the manner that petitioner suggests.  Accordingly, he is not entitled to relief on this

8  claim.

9        C.  Ineffective Assistance of Appellate Counsel

10        Petitioner claims that his appellate counsel was ineffective for failing to raise on

11  appeal a claim that "the jury was allowed to convict petitioner of a crime not charged in the

12  information, in violation of the 6th Amendment."  (P&A at 30.)  Petitioner argues that he was

13  "accused on violation of Penal Code § 470(a) (which contains no statutory language regarding

14  'passing' a forged check), but was convicted on a theory which contains the essential elements of

15  another criminal offense altogether – Penal Code § 475(a)."  (Id. at 35.)

16        The Strickland standards apply to appellate counsel as well as trial counsel.  Smith

17  v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).

18  However, an indigent defendant "does not have a constitutional right to compel appointed

19  counsel to press nonfrivolous points requested by the client, if counsel, as a matter of

20  professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751

21  (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

22  ability of counsel to present the client's case in accord with counsel's professional evaluation

23  would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

24  Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

25  not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

26  meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

1  showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

2  to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this

3  context, petitioner must establish that, but for counsel's errors, he probably would have prevailed

4  on appeal.  Id. at 1434 n.9.

5         Petitioner has failed to demonstrate prejudice with respect to this claim.  As

6  explained above, petitioner knew he was being prosecuted on a theory of uttering a forged check

7  and the jury was so instructed.  There is no suggestion in the record that petitioner was unaware

8  of the prosecution theory or that he was convicted of a crime different from that charged.

9  Appellate counsel's decision to press only issues on appeal that he believed, in his professional

10  judgment, had more merit than the issue suggested by petitioner was "within the range of

11  competence demanded of attorneys in criminal cases."  McMann v. Richardson, 397 U.S. 759,

12  771 (1970).  The state court determination with regard to petitioner's claim of ineffective

13  assistance of appellate counsel was not contrary to, or an unreasonable application of Strickland.

14  Accordingly, petitioner is not entitled to relief on his claim of ineffective assistance of appellate

15  counsel.

16      D.  Prosecutorial Misconduct

17         Petitioner claims that the prosecutor committed misconduct when she failed to

18  call Jerry Eicholt as a trial witness or to inform the jury that Eicholt was in prison and had an

19  extensive criminal background including convictions for forgery and receiving stolen property.

20  Petitioner complains that the prosecutor "focused on petitioner's prior felony convictions, while

21  providing petitioner no opportunity to present evidence that Eicholt was equally capable of

22  crimes of moral turpitude."  (P&A at 20.)  Petitioner argues that his inability to present a

23  complete picture of Mr. Eicholt to the jury resulted in "a wholesale deprivation of petitioner's

24  only defense – that he did not personally alter the check in question and was given the check by

25  Eicholt."  (Id. at 20.)  Petitioner also states that at the time of his trial, Mr. Eicholt was in custody

26  pending charges which could have been charged as a third "strike," but were not and that Eicholt

1  is now out of prison.  Based on these circumstances, petitioner questions whether Mr. Eicholt

2  received favorable treatment from the prosecution.  (Traverse at 18.)  Petitioner argues that "[t]he

3  prosecution has the obligation to present to defense counsel exculpatory and impeachment

4  evidence, yet intentionally failed to do so in this case, rendering petitioner's trial fundamentally

5  unfair."  (Pet. at 5.)

6        In his answer, respondent "assumes for the sake of argument that the prosecutor

7  withheld information of Eicholt's criminal history from Petitioner," but argues that such

8  information was immaterial because neither party called, nor planned to call, Eicholt as a witness

9  at petitioner's trial.  (Answer at 16-17.)  Respondent contends, in other words, that the prosecutor

10  was not required to disclose evidence of Eicholt's criminal background because it was irrelevant

11  to the charges against petitioner in the absence of live testimony from Eicholt.

12        Petitioner presented his claim of prosecutorial misconduct for the first time in a

13  petition for writ of habeas corpus filed in the California Supreme Court.  (Answer, Ex. J.)  The

14  claim was summarily denied.  (Answer, Ex. K.)  Under these circumstances, this court must

15  independently review the record to determine whether habeas corpus relief is available under

16  § 2254(d).  Himes, 336 F.3d at 853.

17        The United States Supreme Court has held "that the suppression by the

18  prosecution of evidence favorable to an accused upon request violates due process where the

19  evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of

20  the prosecution."  Brady v. Maryland, 373 U.S. at 87.  See also Bailey v. Rae, 339 F.3d 1107,

21  1113 (9th Cir. 2003).  The duty to disclose such evidence is applicable even though there has

22  been no request by the accused, United States v. Agurs, 427 U.S. 97, 107 (1976), and

23  encompasses impeachment evidence as well as exculpatory evidence.  United States v. Bagley,

24  473 U.S. 667, 676 (1985).  A Brady violation may also occur when the government fails to turn

25  over evidence that is "known only to police investigators and not to the prosecutor."

26  Youngblood v. West Virginia, ___U.S.___,___,126 S. Ct. 2188, 2190 (2006) ("[T]he individual

1   prosecutor has a duty to learn of any favorable evidence known to the others acting on the

2   government's behalf in the case, including the police") (quoting <u>Kyles v. Whitley</u>, 514 U.S. 419,

3   438 (1995).  There are three components of a <u>Brady</u> violation:  "[t]he evidence at issue must be

4   favorable to the accused, either because it is exculpatory, or because it is impeaching; the

5   evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice

6   must have ensued."  <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999).  <u>See</u> <u>also</u> <u>Banks v. Dretke</u>,

7   540 U.S. 668, 691 (2004); <u>Silva v. Brown</u>, 416 F.3d 980, 985 (9th Cir. 2005).

8           In order to establish prejudice, a petitioner must demonstrate that "'there is a

9   reasonable probability' that the result of the trial would have been different if the suppressed

10  documents had been disclosed to the defense."  <u>Strickler</u>, 527 U.S. at 289.  "The question is not

11  whether petitioner would more likely than not have received a different verdict with the

12  evidence, but whether "in its absence he received a fair trial, understood as a trial resulting in a

13  verdict worthy of confidence."  (<u>Id.</u>) (quoting <u>Kyles</u>, 514 U.S. at 434).  <u>See</u> <u>also</u> <u>Silva</u>, 416 F.3d

14  at 986 ("[A] <u>Brady</u> violation is established where 'the favorable evidence could reasonably be

15  taken to put the whole case in such a different light as to undermine confidence in the verdict.'")

16  Once the materiality of the suppressed evidence is established, no further harmless error analysis

17  is required.  <u>Kyles</u>, 514 U.S. at 435-36; <u>Silva</u>, 416 F.3d at 986.  "When the government has

18  suppressed material evidence favorable to the defendant, the conviction must be set aside."

19  <u>Silva</u>, 416 F.3d at 986.

20          For purposes of these habeas proceedings, this court will assume that the

21  prosecutor was aware of Mr. Eicholt's criminal history and the fact that he was prison at the time

22  of petitioner's trial.  The court will also assume that the prosecutor chose, for tactical reasons, not

23  to call Mr. Eicholt as a witness in order to prevent the jury from learning of his criminal

24  background.  The question presented here is whether this constituted prosecutorial misconduct.

25  This court concludes that it did not because petitioner did not suffer prejudice as a result of the

26  prosecutor's actions.

1    Evidence that Mr. Eicholt had an extensive criminal background, including

2    convictions for forgery and receiving stolen property, may have lent credibility to petitioner's

3    defense that Eicholt forged the check and gave it to petitioner in payment for work performed.

4    However, the fact that Eicholt was in prison was known to petitioner's trial counsel, and

5    Eicholt's criminal background was a matter of public record.  Prosecutorial misconduct did not

6    prevent the defense from presenting such evidence at petitioner's trial.  Rather, defense counsel

7    was aware of the evidence and chose not to introduce it in an apparent tactical decision.  Put

8    another way, the prosecutor's failure to call Eicholt as a witness did not result in prejudice to

9    petitioner because petitioner was already aware of the information that was allegedly

10   "suppressed" by the prosecution.  The court also notes that there is no evidence Eicholt was

11   given improper favorable treatment or that any other actions by the prosecutor rendered

12   petitioner's trial fundamentally unfair.   Petitioner's mere suggestion that the prosecutor declined

13   to charge Eicholt with a third strike for some reason related to petitioner's trial is wholly

14   unsupported and does not entitle petitioner to relief.

15          For the reasons set forth above, the decision of the California Supreme Court

16   rejecting petitioner's claim of prosecutorial misconduct is not contrary to or an unreasonable

17   application of federal law.  Accordingly, petitioner is not entitled to relief on this claim.

18        E.  Cumulative Effect of Errors

19          Finally, petitioner contends that errors at his trial, when considered cumulatively,

20   deprived him of a fair trial.  The California Superior Court rejected this argument on the merits,

21   reasoning as follows:

22          Petitioner's final claim is that the cumulative effect of combined
             errors at trial and on direct appeal resulted in a miscarriage of
23           justice.

24          Petitioner, however, has demonstrated no error at all that occurred
             at trial or on direct appeal.  Moreover, this court is bound by the
25           Third District opinion on appeal, by the law of the case doctrine
             (People v. Shuey (1975) 13 Cal.3d 835), and has no authority to
26           declare that the Third District erred in any way on the appeal;
             rather, only the California Supreme Court or the United States

1     Supreme Court has such authority (see Cal. Const., art. VI, §§ 10-
      12; 28 U.S.C. § 1257(a); U.S. Sup. Ct. Rules, R. 17(1)).  As such,
2     the claim fails for failure to state a prima facie case for relief (In re
      Bower (1985) 38 Cal.3d 865).

3

4  (Answer, Ex. G.)

5          This court has read the entire transcript of petitioner's trial.  The record reflects

6  that petitioner was able to fully present his defense that he was unknowingly given a forged

7  check by Mr. Eicholt in payment for services rendered and that his actions at the bank

8  demonstrated his innocence.  The jury simply did not believe petitioner's story.  As discussed

9  above, petitioner argues that Eicholt should have been called as a witness at his trial and that

10 Eicholt's criminal background should have been presented to the jury for its consideration.

11 However, petitioner's trial counsel interviewed Mr. Eicholt and decided, apparently for tactical

12 reasons, not to call him as a witness at petitioner's trial.  A reasonable tactical decision by a trial

13 attorney may not form the basis for habeas corpus relief.  Although petitioner speculates that

14 Eicholt's testimony would have been beneficial to his defense, there is no evidence before the

15 court that trial counsel's tactical decision in this regard was unreasonable.

16         The Due Process Clause of the Fourteenth Amendment encompasses the right to a

17 fair trial.  In re Murchison, 349 U.S. 133, 136 (1955).  Where the cumulative effect of errors is so

18 prejudicial that a defendant is denied a fair trial, habeas relief may be warranted.  See United

19 States v. Necoechea, 986 F.2d 1273, 1282-83 (9th Cir. 1993).  However, as the United States

20 Supreme Court has stated:

21         The thrust of the many constitutional rules governing the conduct
           of criminal trials is to ensure that those trials lead to fair and
22         correct judgments.  Where a reviewing court can find that the
           record developed at trial establishes guilt beyond a reasonable
23         doubt, the interest in fairness has been satisfied and the judgment
           should be affirmed.  As we have repeatedly stated, "the
24         Constitution entitles a criminal defendant to a fair trial, not a
           perfect one."

25

26 /////

1  Rose v. Clark, 478 U.S. 570, 579 (1986) (quoting Van Arsdall, 475 U.S. 673, 681 (1986).  The

2  record reflects that petitioner received a fair trial.  Petitioner has not established a denial of due

3  process with respect to any of his individual claims raised in the instant petition.  Likewise,

4  considered in their aggregate, those claims do not compel the finding of a due process violation.

5  Accordingly, petitioner is not entitled to relief with respect to his cumulative error claim.

6        F.  Evidentiary Hearing

7            Petitioner requests an evidentiary hearing on his claims, "individually and

8  cumulatively."  (P&A at 37.)  Pursuant to 28 U.S.C. § 2254(e)(2), a district court presented with

9  a request for an evidentiary hearing must first determine whether a factual basis exists in the

10  record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be

11  appropriate."  Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999).  See also Earp v. Ornoski,

12  431 F.3d 1158, 1166 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir.

13  2005).  A petitioner must also "allege[] facts that, if proved, would entitle him to relief."  Schell

14  v. Witek, 218 F.3d 1017, 1028 (9th Cir. 2000).  The court has had the benefit of the state court

15  record.  Petitioner has not demonstrated that any additional facts need to be determined in order

16  to resolve the claims raised in the instant petition.  Further, this court has determined that relief

17  as to petitioner's claims should be denied on the merits because the state court's decision was not

18  contrary to, or an unreasonable application of, clearly established federal law or based on an

19  unreasonable determination of the facts.  Accordingly, an evidentiary hearing is not warranted.

20  See Williams, 529 U.S. at 445; Earp, 431 F.3d 1166.

21            Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

22  a writ of habeas corpus and request for an evidentiary hearing be denied.

23            These findings and recommendations are submitted to the United States District

24  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

25  days after being served with these findings and recommendations, any party may file written

26  objections with the court and serve a copy on all parties.  Such a document should be captioned

1   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2   shall be served and filed within ten days after service of the objections.  The parties are advised

3   that failure to file objections within the specified time may waive the right to appeal the District

4   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5   DATED: October 10, 2007.

6

7                                                    Dale A. Drozd

8                                          DALE A. DROZD
                                           UNITED STATES MAGISTRATE JUDGE
9   DAD:8
    chapman1015.hc
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26